# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
# IN AND FOR NEW CASTLE COUNTY

DELAWARE HEALTH AND
SOCIAL SERVICES, AUDIT AND
RECOVERY MANAGEMENT
SERVICES,

    Plaintiff-Below/Appellant,

          v.

ANDREA L. GLAZIK,

    Defendant-Below/Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. CPU4-14-001527

Submitted: January 15, 2016
Decided: March 14, 2016

Oliver J. Cleary, Esquire
Department of Justice
820 N. French Street, 6th Floor
Wilmington, DE 199801
*Attorney for Plaintiff*

Andrea L. Glazik
47 Augusta Drive
Newark, DE 19713
*Pro Se Defendant*

## DECISION AFTER TRIAL

**SMALLS, C.J.**

This matter is on appeal from the Justice of the Peace Court pursuant to 10 *Del. C.* § 9571. Delaware Health and Social Services ("DHSS"), through its collecting agent Audit and Recovery Management Services ("ARMS") (collectively, the "State"), seeks recovery of overpayments for certain welfare benefits provided to Andrea L. Glazik ("Defendant") pursuant to 10 *Del. C.* § 114, in the amount of $6,156.60.[1]  On January 5, 2016, the Court held trial, and reserved its decision.  This is the Court's final Opinion and Order.

Specifically, the State claims that DHSS overpaid Defendant for the following: (1) $709.00 for Temporary Assistance for Needy Families ("TANF")[2] for benefits received from December 2011 through May 2012; (2) $4,394.60 for Child Care benefits received from April 2013 to August 2013; and (3) $1,053.00 for TANF benefits received from April 2013 to August 2013.  The overpayment in the amount of $709.00 for TANF benefits for December 2011 through May 2012 is not in dispute.[3]  Therefore, the Court will focus its analysis on whether the State can recover the alleged overpayments for the time period of April 2013 to August 2013.

## FACTS

At trial, the State presented Leith Murray, a collections enforcement officer employed by ARMS, as its sole witness.  Mr. Murray explained that DHSS refers cases to ARMS when it determines that there has been an overpayment of public assistance benefits, which may

---

[1] ARMS is a division within DHSS, and provides audit and recovery services addressing acts of fraud in public welfare programs administered by DHSS. *See* 16 *Del. Admin. C.* § 5100–7001. The caption from the Justice of the Peace Court matter only lists DHSS as the Plaintiff. On appeal, however, ARMS is also included. In the Complaint on Appeal, DHSS avers that ARMS is merely its collecting agent.

[2] TANF is "a program established by Title IV-A of the Social Security Act and authorized by Title 31 of the Delaware Code to provide benefits to needy children who are deprived of parental support and care. While on TANF, families are eligible for child care only as long as they are working or participating in a TANF Employment and Training activity." State's Ex. 13. *See also* 16 *Del. Admin. C.* § 5100–3000.

[3] Defendant admitted to receiving this overpayment in her Answer and at trial.

occur due to agency error or the recipient's failure to comply or cooperate with the terms of the public assistance program.[4] In his capacity as a collections enforcement officer, Mr. Murray works as an investigative officer, and reviews delinquency reports and recovers overpayments upon receiving referrals from DHSS.[5] He further explained that recipients of welfare benefits are provided a Notice of this overpayment, and are given an opportunity to request a hearing before DHSS decreases or discontinues their benefits. If an individual requests a hearing but fails to appear, her case is dismissed, and she is required to repay DHSS the amount of benefits that constituted the overpayment.

With respect to the matter at hand, Mr. Murray testified that ARMS received a complaint from DHSS indicating that Defendant had been sanctioned, and therefore was not in compliance with the TANF program, which rendered her ineligible to receive TANF and Child Care benefits. Mr. Murray further explained that Defendant received Notice of the overpayment, and subsequently requested a hearing. DHSS and ARMS sent multiple Notices to Defendant—to various addresses—informing her of an overpayment of benefits, and of her hearing date.[6] Defendant, however, failed to appear at the hearing, and therefore DHSS dismissed her case, and discontinued her benefits.

---

[4] For example, upon entering public assistance programs, recipients are required to report any changes in income.

[5] Mr. Murray explained, in detail, the process in which ARMS determines the appropriate deductions and calculates the amount of assistance provided.

[6] The State used multiple addresses because the Notices were being returned as either unclaimed or undeliverable. Mr. Murray testified that in one instance, he could not explain why DHSS and ARMS even used a particular address. Nonetheless, because the State sent Notice to an address where Defendant had previously received her public assistance benefits checks, it maintained that Defendant did receive the Notice. Defendant challenges this contention and argues that the State's inability to produce any concrete evidence that she actually received Notice supports her proposition that she did not receive Notice.

Thereafter, the State attempted to recover the overpayment by filing a debt action in the Justice of the Peace Court. The State timely filed an appeal to this Court after the Justice of the Peace Court determined that it found that the Notices DHSS and ARMS sent to Defendant were sent to improper addresses.

## DISCUSSION

The instant matter is an action to recover overpayments of certain welfare benefits embedded in the nature of a debt action. As such, the State has the burden of proving the underlying debt by a preponderance of evidence.[7] Preponderance of the evidence is defined to mean "the side on which the 'greater weight of the evidence' is found" under all of the facts and circumstances presented at trial.[8] Accordingly, the State must prove, by a preponderance of the evidence, that DHSS overpaid Defendant for $4,394.60 in Child Care benefits and $1,053.00 in TANF benefits during the time period of April 2013 to August 2013.

In order to receive TANF benefits, a minor child must be living in the home of a parent, guardian, custodian or specified relative, and be considered in need under the Division of Social Services ("DSS") standards.[9] By participating in TANF, "[t]he State and the family have mutual responsibilities. The State [ ]create[s] positive incentives for the family to become self sufficient[, and t]he family accepts responsibility to become self-sufficient and self supporting."[10] Upon entering TANF, the adult caretaker enters into a

---

[7] *Flores v. Santiago*, 2009 WL 2859049, at *2 (Del. Com. Pl. Feb. 11, 2009) (citing *Orsini Topsoil v. Carter*, 2004 WL 1098338 (Del. Com. Pl. May 18, 2004); *Mantyla v. Wilson*, 2004 WL 326927 (Del. Com. Pl. Feb. 4, 2004); *Wirt v. Matthews*, 2002 WL 31999360 (Del. Com. Pl. Feb. 7, 2002)).
[8] *Taylor v. State*, 748 A.2d 914 (Del. 2000) (citing *Reynolds v. Reynolds*, 237 A.2d 708, 711 (Del. 1967)).
[9] 16 *Del. Admin C.* § 5100–3000.
[10] *Id.*

4

Contract of Mutual Responsibility with DSS (the "Contract"), which outlines, *inter alia*, employment requirements, school attendance requirements, family planning, and parenting education classes, which fits the specific needs of each individual family.[11]  When a TANF recipient fails to comply with the Contract, DSS will impose sanctions, including a decrease in or discontinuation of benefits.[12]

When a recipient of TANF benefits meets certain employment criteria or adheres to certain participation requirements as provided by TANF, he or she may also receive Child Care benefits for a dependent child.[13]  However, TANF recipients who fail to meet these requirements or fail without good cause to comply with the TANF program are sanctioned and lose their Child Care benefits.[14]

Section 5100–7002 of the Delaware Administrative Code governs the way in which the amount of overpayment is determined, and provides, in pertinent part:

> An overpayment is a Cash Assistance payment made in excess of the amount a recipient is entitled to receive..[sic] Overpayments may be caused by client or agency error. In either situation, the recipient is expected to repay to DHSS the amount of benefits received in error. Repayment is based on the legal principle that when a person is paid benefits to which (s)he is not entitled, the payer has a right to recovery of those benefits.[15]

Moreover, "[w]hen an overpayment occurs because a recipient is technically ineligible for assistance, the overpayment equals the amount of the assistance grant paid." Under § 5100–7002.1, a person is 'technical ineligible' for assistance when his or her ineligibility hinges on

---

[11] Id. at § 5100–3009.
[12] Id. at § 5100–3009.1.
[13] *Id.* at § 5100–11003.2.
[14] *Id.* at § 11003.2.1.
[15] *Id.* at § 5100–7002.

5

non-financial reasons. Once DSS discovers a recipient's ineligibility, it notifies ARMS, and ARMS calculates the overpayment and notifies the recipient of that overpayment.[16] The recipient has thirteen days from the date of the Notice to request a fair hearing.[17]

As stated *supra*, the State alleges that that DHSS overpaid Defendant for $4,394.60 in Child Care benefits and $1,053.00 in TANF benefits during the time period of April 2013 to August 2013. After reviewing the applicable rules that govern TANF and Child Care benefits, it logically follows that in order to prove this overpayment, the State must first establish that Defendant was eligible to receive the benefits, entered into a Contract with DSS outlining her responsibilities while receiving TANF benefits, received payments from the State, and then became technically ineligible while continuing to receive those benefits by failing to comply with the Contract. In essence, this matter amounts to an action for breach of contract.

In reviewing the record, I find that the State has not met its burden in establishing that Defendant received an overpayment of benefits. Although the State proffered evidence demonstrating that it paid Defendant TANF and Child Care benefits during the time period of April 2013 to August 2013, the State has not proffered any evidence regarding Defendant's eligibility prior to this time period, nor has the State proffered any evidence that Defendant entered into a Contract with DSS.[18] Instead, the State focused solely on establishing that Defendant received Notice of the overpayment, thereby bypassing the

---

[16] *Id.* at § 5100–7003.
[17] *Id.*
[18] The State failed to present any evidence regarding the process an individual must go through in order to obtain TANF benefits, including the fact that upon entering TANF, the adult caretaker must enter a Contract with DSS outlining their responsibilities while in the program. This is especially problematic because the basis of Defendant's liability purportedly would fall on her alleged noncompliance with the Contract.

6

underlying issue of establishing the debt itself. While the Notices state that Defendant became ineligible for benefits because she was "not cooperating," the record is void of any other facts detailing her alleged noncompliance.[19] This conclusive statement is insufficient to establish Defendant's liability for the overpayment. Therefore, because there is nothing in the record establishing Defendant's initial eligibility to receive benefits, her Contract with DSS, and facts detailing her alleged noncompliance, I find that the State has not established the debt by preponderance, and thus has not established Defendant's liability for the overpayments.

## CONCLUSION

For the foregoing reasons, judgment is entered in favor of Plaintiff in the amount of $709.00 for overpayment of TANF benefits for the time period of December 2011 through May 2012. Judgment is entered for Defendant on the State's claim regarding the alleged overpayments of $4,394.60 in Child Care benefits and $1,053.00 in TANF benefits during the time period of April 2013 through August 2013.

**IT IS SO ORDERED.**

Alex J. Smalls, Chief Judge

---

[19] The Notices provide, in pertinent part, "While looking at your TANF case, we found that you were paid too much. This is because important information was not included when we figured out the amount of your TANF. The important information was: DSS applied a Division of Child Support Sanction at the request of DCSE due to client not cooperating." *See* State's Ex.'s 10, 11, 19; *see also* State's Ex.'s 6, 12, 14.